Judge Wood
delivered the opinion of the court:
The writing on which the plaintiffs declare, is between Cahoon of the first part, Kelly- and Kilborn of the second part, and Wildman and Mills of the third part. So much of it as it seems material to notice, recites that Cahoon had determined to build in 'Sandusky a mill, of stone, to be propelled by steam, of four stories in height, and sixty by forty feet on the ground. The plaintiffs covenanted to do the work; Cahoon to furnish certain portions of the materials, and to pay the plaintiffs in the manner expressed : one dollar for each perch of stone in the walls, without deduction for doors, windows, etc. The defendant and Wildman then covenanted as follows, viz:
“ That to aid the said first and second parties in the work of •erecting the walls of said stone mill, they will pay the plaintiffs for laying up said walls, at and after the rate or price before stated, in the manner and at the times following: $150 whenever and as soon as the walls of the lower story shall be completed; a like sum as soon as the second story shall be completed; a like *sum when the third story shall be completed; and a like sum whenever or as soon as the fourth story shall be completed, including the gable ends and battlements.”
It is then stipulated that such sum as Kelly, one of the plaintiffs, shall be owing the defendants upon a land contract (supposed about $150), shall be applied in part payment of said work; and the said Kilborn, the other plaintiff, shall take the same amount in a lot in the city of Sandusky, or in cash obligations at the election of the defendants. It was further stipulated, that those two last payments should be made, although such payment should curtail the other payments mentioned. And when the whole amount shall have been paid to said Kelly and Kilborn, at the rate of one dollar per perch, as aforesaid, it shall be in full of all their claims, unless damages have been sustained by the non-performance of their contract; and is an advancement made by said third party to said first party, in aid of his aforesaid undertaking. Then follows the covenant in these words:
“ Said second party is to lay eight stone piers in the body of ■said building, as foundations for an equal number of posts, and to *330 be paid for in the same manner as the solid walls of said building.”' Upon the inquiry of damages'the court instructed the jury that the covenants of the defendants were collateral to and independent of the covenants of Cahoon; and, in the language of the covenant, were intended as an advancement to Cahoon, to aid both parties, and secure the progress of the work; that the defendants had undertaken for the performance of Cahoon,.and were liable for his non-performance to the same extent he would be if the suit were against him. The jury were further instructed to find the items of the damages found for the plaintiffs. The verdict assessed damages for the three following items:
1. For digging the foundation of the building and piers, $209.45.
2. For laying the foundation and piers, $620.
3. For the walls of the first and second stories, $700.40.
Total damages, $1,529.85.
Upon a motion in arrest, the objections to the judgment must appear on the record. In this case, if the declaration fail to deduce from the covenants set forth a legal liability to respond in damages, or does not show a legal right in the plaintiffs to recover, the motion in arrest will prevail. The contract is very unskillfully *drawn, and owing to the numerous contradictions and equivocal expressions in it, there is certainly some difficulty in comprehending its legal import, or the intention of the parties to-it. It is our duty to search for the meaning and intention of these parties from the whole instrument taken together.
As the case is presented, it appears to us the only question is,, to what extent are the defendants liable on their covenants ? In one place they agree to pay at the rate of one dollar a perch for laying up the walls of the mill, in the same manner stipulated by Cahoon. This would render them liable to the whole sum found by the jury. In another place, it is stated that when payments shall be made to the plaintiffs at the rate of one dollar per perch, etc., it will be in full of all their claims, unless damages-shall be sustained by the non-performance. Take this part, by itself, and the defendants are not only liable for the amount found by the jury, but for additional damages for Cahoon’s nonperformance.
Again, it is stated that the defendants will lift any orders for the payment of the bond which the plaintiffs might give apon the stores in Sandusky, without any limit as to the amount. In one *331 sentence, the defendant’s undertaking is stated to be an advancement to Cahoon; in another, to aid both him and the plaintiffs. Scanning the whole agreement, we will endeavor to extract the intention of the parties. There seems but one sensible clause in the first four pages of the contract, and from this we gather, as-near as we can, the liabilities of the defendants. By this the defendants covenant to pay $150 when each of the four stories of the mill are completed, in all $600, to be satisfied in part by the sum due defendants by Kelly on a land contract, and by like amount to Kilborn in a city lot or cash obligations, at the option of defendants, though such payment may curtail the particular payments stipulated. We think this clause manifests the intention-of the parties to limit the liabilities of the defendants to $600 in-all. When, therefore, the defendants covenanted to pay for the work at a dollar a perch, we think the parties intended they should so pay only to the amount of $600, for which’ they were security for Cahoon, and for any sum beyond that the plaintiffs should look to him for remuneration. If we are correct in this construction, the verdict finds damages to the amount of $929.85 beyond the liability of the defendants, and can not, therefore, be-sustained.
The cause is remanded to the county for a venire de novo.